IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | C.A. No.: |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT** |
| DHD VENTURES MANAGEMENT COMPANY, INC., DHD VENTURES NC, LLC, and DHD VENTURES, LLC, | ) ) ) ) ) | **JURY TRIAL DEMAND** |
| Defendants. | ) ) ) | |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991 ("Title VII"), to correct unlawful employment practices on the basis of race and retaliation, and to provide appropriate relief to Charles Lesine ("Lesine") and Marlin Ware ("Ware"), who were adversely affected by such practices. Plaintiff, the U.S. Equal Employment Opportunity Commission ("EEOC" or "the Commission"), alleges that Defendants, DHD Ventures Management Company, Inc., DHD Ventures NC, LLC, and DHD Ventures, LLC (collectively "Defendants"), subjected Lesine and Ware to a racially hostile work environment based on their race, African American. The Commission further alleges that Defendants terminated Lesine and Ware in retaliation for complaining about the racial harassment.

JURISDICTION AND VENUE

1.	Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court District of South Carolina, Greenville Division. This lawsuit is being filed in the Greenville Division because a substantial part of the events or omissions giving rise to the claims alleged in this suit occurred within the Greenville Division.

## PARTIES

3. Plaintiff is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At times relevant to this lawsuit, defendant DHD Ventures Management Company, Inc., a North Carolina corporation, has been doing business in the State of South Carolina and the City of Greenville.

5. At times relevant to this lawsuit, defendant DHD Ventures NC, LLC, has been doing business in the State of South Carolina and the City of Greenville.

6. At times relevant to this lawsuit, defendant DHD Ventures, LLC, a North Carolina corporation, has been doing business in the State of South Carolina and the City of Greenville.

7. On information and belief, at all relevant times, the defendants named in this action have operated as an integrated business enterprise, and have collectively had at least 15 employees on a continual basis. Among other things, the defendants share common ownership, as well as common management and centralized control of labor relations.

8. Upon information and belief, none of the defendants are or ever have been authorized to conduct business in South Carolina.

9. At all relevant times, the defendants named in this action have continuously been employers engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g), and (h).

## STATEMENT OF CLAIMS

10. More than 30 days prior to the institution of this lawsuit, Lesine and Ware filed separate charges of discrimination with the Commission alleging violations of Title VII by Defendants. All conditions precedent to the institution of this lawsuit have been fulfilled.

11. <u>Racially hostile work environment:</u> Since at least late 2007 through at least November 17, 2011, Defendants engaged in unlawful employment practices at Grandeagle Apartments, a residential apartment complex managed by Defendants in Greenville, South Carolina (hereafter sometimes the "Property"), in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1). Specifically, Defendants discriminated against Lesine and Ware by subjecting them to severe or pervasive racial comments that created a racially hostile work environment. The racial comments were unwelcome to Lesine and Ware and were perpetrated by the Assistant to the Property Manager (hereafter "Leasing Consultant").

12. Defendants hired Lesine in or around April 2007 as the Grandeagle Apartments Maintenance Supervisor. Lesine reported to the Property Manager and Regional Property Manager for the apartments.

13. In or around late 2007, Defendants hired the Leasing Consultant. Almost immediately after her hire, the Leasing Consultant began using the terms "nigger" and "nigga" in the presence of and directly to Lesine.

14.     Defendants hired Ware in or around February 2008 as a Maintenance Technician. Ware reported directly to the Maintenance Supervisor.  He also reported to the Property Manager and the Regional Property Manager for the apartments.

15.     During a staff meeting held on or about Ware's first day of employment, the Leasing Consultant used the term "nigger" in the meeting.  Immediately after the meeting, Ware verbally complained to the Property Manager, stating the use of "nigger" by the Leasing Consultant was offensive.  Defendants took no action to stop the harassment.

16.      The Leasing Consultant continued to say "nigger" and "nigga" in the presence of and directly towards Lesine and Ware on an almost daily basis throughout their employment.

17.     For example, in July 2010, the Leasing Consultant screamed at and berated Ware over the telephone.  During the conversation, the Leasing Consultant referred to Ware as a "stupid nigger."  Approximately one week later, while in the office, the Leasing Consultant cussed at Ware and called him "nigger."

18.     Both Lesine and Ware told the Leasing Consultant on numerous occasions that her use of the words "nigger" and "nigga" was racially offensive to them.  They both also asked the Leasing Consultant to stop using the words in their presence.

19.     Both Lesine and Ware made repeated verbal complaints to the Property Manager, who took no action to stop the harassment.

20.     From December 2010 through early October 2011, the Grandeagle Apartments was in receivership and was managed by TriBridge Residential, a corporate entity with no apparent connection to Defendants.  In or around early October 2011, Defendants resumed management of the Property.

21. The harassment of Lesine and Ware, which began during Defendants' management of the Property, continued uninterrupted throughout the period of receivership. The harassment then further continued uninterrupted after Defendants resumed management of the Property in October 2011.

22. In or about early to mid-October 2011, Lesine and Ware complained to Defendants' Regional Property Manager about the Leasing Consultant's use of "nigger" and "nigga."

23. On or about October 15, 2011, Defendants held a staff meeting during which the Regional Property Manager stated she did not want anyone using racial slurs anymore. The following day, in front of Ware and Lesine, the Leasing Consultant commented about her understanding, apparently based on the meeting, that she could not use the word "nigga." The Leasing Consultant immediately thereafter repeatedly said the word "nigga" as if to mock the fact that employees had been told not to use the word anymore.

24. In or around early to mid-October 2011, Lesine complained to Defendant's President/Co-Owner that the Leasing Consultant used "the 'n' word." Defendants took no action to stop the racial harassment, and the harassment continued.

25. In late October 2011, Defendants promoted the Leasing Consultant to Property Manager for the Property.

26. On or about November 15, 2011, Ware verbally complained to the Regional Property Manager that the Leasing Consultant (now Property Manager) continued to call him "nigger."

27. In a staff meeting held on or about November 16, 2011, the Regional Property Manager again told employees not to use racial epithets. At the end of the meeting, Ware gave

the Regional Property Manager a written complaint that he had prepared following his verbal complaint made on or about November 15, 2011.  In the written complaint, Ware stated the Leasing Consultant (now Property Manager) said "whatever nigga" in front of a tenant, and had said "niggas, niggas, niggas!"

28.     Later in the day on or about November 16, 2011, during a conversation between the Leasing Consultant (now Property Manager) and Maintenance Supervisor Lesine, the Leasing Consultant referred to Ware as "nigga" and threatened to "get him" for complaining about her use of "nigga" to the Regional Property Manager.  In response, Lesine told the Leasing Consultant (now Property Manager) to leave Ware alone and to stop using "the 'n' word."

29.     Defendants are liable for the racial harassment because they knew or should have known about the racial harassment and failed to take effective action to stop it.  The harassment continued through November 17, 2011, the date Defendants discharged Lesine and Ware.

30.     <u>Retaliation discharge</u>:  On or about November 17, 2011, Defendants engaged in unlawful employment practices in Greenville, South Carolina, in violation of Section 704(a), 2000e-3(a), by discharging Lesine and Ware because they opposed employment practices made unlawful by Title VII.  Specifically, within approximately one month of Lesine's most recent complaint about the Leasing Consultant's use of "nigger" and "nigga," Defendants terminated Lesine.  Within a day of Ware's most recent complaint about the Leasing Consultant's use of "nigger" and "nigga," Defendants terminated Ware.

31.     Lesine and Ware were subjected to a hostile work environment based on their race, African American, and were discharged because they complained about the harassment.

32. The effect of the practices complained of above has been to deprive Lesine and Ware of equal employment opportunities and otherwise adversely affect their status as employees because of their race, African American.

33. The unlawful employment practices complained of above were intentional.

34. The unlawful employment practices complained of above were done with malice or reckless indifference to the federally protected rights of Lesine and Ware.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them, from maintaining a racially hostile work environment and from any other employment practice that discriminates on the basis of race and from retaliating against employees who oppose practices made unlawful by Title VII.

B. Order Defendants to institute and carry out policies, practices, and programs that provide equal employment opportunities for blacks and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendants to make whole Charles Lesine and Marlin Ware by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement or front pay in lieu thereof and lost and/or reduced employee benefits.

D. Order Defendants to make whole Charles Lesine and Marlin Ware by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, in amounts to be determined at trial.

E. Order Defendants to make whole Charles Lesine and Marlin Ware by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and loss of civil rights in amounts to be determined at trial.

F. Order Defendants to pay Charles Lesine and Marlin Ware punitive damages for their malicious and reckless conduct as described above in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

DATED this the 8th day of January, 2015.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
U.S. EQUAL EMPLOYMENT

OPPORTUNITY COMMISSION
131 M Street, NW
Washington, D.C.  20507

LYNETTE A. BARNES (NC Bar # 19732)
Regional Attorney

KARA GIBBON HADEN (NC Bar # 26192)
Supervisory Trial Attorney

**s/ Rachael S. Steenbergh**
RACHAEL S. STEENBERGH (Fed. Bar # 10867)
Trial Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Charlotte District Office
129 W. Trade Street, Suite 400
Charlotte, NC 28202
Telephone:  (704) 954-6472
Facsimile:   (704) 954-6412
Email:         rachael.steenbergh@eeoc.gov

**ATTORNEYS FOR PLAINTIFF**

9