IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Equal Employment Opportunity Commission, | ) ) ) | Civil Action No. 6:15-102-TMC-KFM |
| Plaintiff, | ) ) | |
| and | ) ) | **REPORT OF MAGISTRATE JUDGE** |
| Charles Lesine and Marlin Ware | ) ) | |
| Intervening Plaintiffs, | ) ) | |
| vs. | ) ) | |
| DHD Ventures Management Company, Inc., DHD Ventures, NC, LLC, and DHD Ventures, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on several motions to dismiss filed by the defendants (docs. 12, 14, 15, 20, 21, 24, 25, 26, 27). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Civ. Rule 73.02(B)(2)(g) (D.S.C.), all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration. A hearing on the pending motions was held before the undersigned on Thursday, May 7, 2015. Based upon the arguments of counsel in the hearing and briefs, the undersigned makes the following recommendations to the district court.

## BACKGROUND

The plaintiff Equal Employment Opportunity Commission ("EEOC"") filed a complaint against defendants DHD Management Company, Inc. ("DHD Management"), DHD Ventures, LLC ("DHD Ventures"), and DHD Ventures NC, LLC ("DHD NC") (collectively, the "defendants"), alleging that the defendants subjected Charles Lesine and

Marlin Ware to a racially hostile work environment and terminated their employment in retaliation for their complaints about the harassment in violation of Title VII of the Civil Rights Act of 1964, as amended. The defendants separately filed motions to dismiss the EEOC's complaint on March 10, 2015 (docs. 12, 14, 15). On March 11, 2015, intervening plaintiffs Lesine and Ware each filed an intervenor complaint (docs. 17, 18), incorporating by reference all of the allegations and claims set forth in the EEOC's complaint. Additionally, the intervening plaintiffs seek additional relief for their attorney's fees and costs in the action (docs. 17, 18). On March 20, 2015, the defendants each filed separate motions to dismiss the intervenor complaints (docs. 20, 21, 24, 25, 26, 27).

## ALLEGATIONS

According to the EEOC's complaint, Lesine and Ware were employed in 2007 and 2008 respectively at Grandeagle Apartments, a residential apartment complex allegedly managed by the defendants (doc. 1 ¶¶ 11, 12, 14). The EEOC alleges: "On information and belief, at all relevant times, the defendants named in this action have operated as an integrated business enterprise, and have collectively had at least 15 employees on a continual basis. Among other things, the defendants share common ownership, as well as common management and centralized control of labor relations" (*id.* ¶ 7). From December 2009 until October 2011, Grandeagle Apartments was in receivership and was managed by TriBridge Residential, a "company with no apparent connection to the Defendants" (*id.* ¶ 20). Beginning in October 2011, DHD Management re-employed Lesine and Ware until their termination from employment on November 17, 2011 (*id.* ¶¶ 21, 30).

Both Ware and Lesine filed charges with the South Carolina Human Affairs Commission ("SCHAC"), which were referred to the EEOC. Originally, both Ware and Lesine filed their charges against DHD NC (docs. 12-3, 12-4). In January 2012, defense counsel was notified that Ware and Lesine had both amended their charges "to show the correct name of Respondent," DHD Management (docs. 12-5, 28-1). DHD Management is the only respondent named in the amended charges (*id.*). The EEOC filed the complaint in this action against the defendants on January 8, 2015 (doc. 1).

## **APPLICABLE LAW AND ANALYSIS**

### *Personal Jurisdiction*

Defendants DHD NC and DHD Ventures have moved to dismiss the EEOC's complaint and the intervenor complaints for lack of personal jurisdiction, arguing they do not have minimum contacts with South Carolina (docs. 14, 15, 24, 25, 26, 27). When a defendant challenges the court's personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden of proving that jurisdiction exists "by a preponderance of the evidence." *In re Celotex Corp*., 124 F.3d 619, 628 (4th Cir.1997). "[W]hen, as here, a district court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing or without deferring ruling pending receipt at trial of evidence relevant to the jurisdictional issue, but rather relies on the complaint and affidavits alone, 'the burden on the plaintiff is simply to make a prima facie showing of sufficient jurisdictional basis in order to survive the jurisdictional challenge.' " *Id*. (citation omitted). In deciding whether plaintiff has met this burden, the court construes all disputed facts and draws all reasonable inferences from the proof in favor of jurisdiction. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc*., 334 F.3d 390, 396 (4th Cir. 2003). The court may consider evidence outside of the pleadings, such as affidavits and other evidentiary materials, without converting the motion to dismiss into a motion for summary judgment. *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc*., 784 F.Supp. 306, 310 (D.S.C.1992).

A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. Fed. R. Civ. P. 4(k)(1)(A). "In order for a district court to validly assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied . . . [f]irst, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with the Fourteenth Amendment due process requirements." *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). South Carolina's long arm statute provides as follows:

3

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's: (1) transacting any business in this State; (2) contracting to supply services or things in the State; (3) commission of a tortious act in whole or in part in this State; (4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State; (5) having an interest in, using, or possessing real property in this State; (6) contracting to insure any person, property, or risk located within this State at the time of contracting; (7) entry into a contract to be performed in whole or in part by either party in this State; or (8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

S.C. Code Ann. § 36–2–803(A). "South Carolina's long-arm statute has been interpreted to reach the outer bounds permitted by the Due Process Clause." *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997) (citation omitted). Therefore, the appropriate question for the court in considering a personal jurisdiction defense raised by an out-of-state defendant is whether that defendant has "minimum contacts with [South Carolina] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." *Id*. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction may arise through specific jurisdiction, based on the conduct alleged in the suit, or through general jurisdiction. *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009). Under general jurisdiction, a defendant's contacts/activities in the forum state are not the basis for the suit, but it may be sued in the court of the forum state "for any reason, regardless of where the relevant conduct occurred," because its activities in the forum state are "continuous and systematic." *Id.* (citation omitted). These activities must be "so substantial and of such a nature as to justify suit against [a defendant] on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe Co.*, 326 U.S. at 318. General jurisdiction is proper where

4

the defendant has purposefully "availed himself of the privilege of conducting business [in the forum state]." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Under specific jurisdiction, a defendant may be sued in this court if the litigation results from alleged injuries that arose out of or related to their contacts with South Carolina and those contacts were sufficient. *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). To determine whether specific jurisdiction exists, courts should examine "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.' " *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

The plaintiffs' vague assertions are insufficient to establish personal jurisdiction over DHD NC and DHD Ventures. These defendants have submitted affidavits showing that they have no contacts whatsoever with South Carolina (docs. 14-6, 15-3). The plaintiffs do not allege that these defendants have an office or agent in the state, own property, conduct business, or perform a contractual duty in South Carolina. The plaintiffs have not alleged that these defendants engaged in any activity purposefully directed at the state or would reasonably expect to be brought into court in South Carolina. They merely allege that "Defendants" engaged in discriminatory and retaliatory employment practices; however, they do not allege any specific wrongful acts attributable to DHD Ventures or DHD NC. Rather, the plaintiffs "seek to assert jurisdiction over [DHD NC and DHD Ventures] through the 'integrated enterprise' theory" (doc. 29 at 9; doc. 30 at 8). As noted above, the EEOC's complaint alleges: "On information and belief, at all relevant times, the defendants named in this action have operated as an integrated business enterprise, and have collectively had at least 15 employees on a continual basis. Among other things, the defendants share common ownership, as well as common management and centralized control of labor relations" (doc. 1 ¶ 7). The plaintiffs argue that "[o]nce an 'integrated enterprise' is established, [DHD Ventures' and DHD NC's] contact with South carolina . .

5

. [is] rendered irrelevant as the Court's jurisdiction over [DHD Management], which is not disputed, imputes to [these defendants]" (doc. 30 at 9; doc. 29 at 10).

Courts within this circuit, however have found that the integrated enterprise liability theory cannot be used to establish personal jurisdiction.  As the District of Maryland has held:

> "[J]urisdiction and liability are ... separate inquiries." *Cent. States Se. & Sw. Areas Pension Fund v. Reimer Express World Corp*., 230 F.3d 934, 944 (7th Cir. 2000). "[T]hat a defendant would be liable under a statute if personal jurisdiction over it could be obtained is irrelevant to the question of whether such jurisdiction can be exercised." *Id*. If a defendant does not have sufficient minimum contacts with the forum, the personal jurisdiction analysis ends "without examining the plaintiff's causes of action." *Id*. at 944-45. The laws on which the suit are based are irrelevant to the jurisdictional inquiry "because a state or federal statute cannot transmogrify insufficient minimum contacts into a basis for personal jurisdiction by making these contacts elements of a cause of action." *Id*. at 945. That "would violate due process." *Id*.
>
> In this case, application of the integrated enterprise test for jurisdictional purposes would violate due process. The Court will not apply the test to assert personal jurisdiction over the Defendants, which aside from Management, appear to have had no contacts with Maryland, and no involvement in Communications's operations here.

*E.E.O.C. v. AMX Communications, Ltd*., C. A. No. WDQ-09-2483, 2011 WL 3555831, at *6-7 (D. Md. 2011) (footnote omitted).  *See also Price v. Waste Mgmt*., C.A. No. ELH-13-02535, 2014 WL 1764722, at *10 (D. Md. Apr. 30, 2014) (same); *E.E.O.C. v. Bass Pro Outdoor World, LLC*, 884 F. Supp. 2d 499, 525-26 (S.D. Tex. 2012) ("The integrated enterprise theory . . . is a liability standard . . . not a jurisdictional standard."); *Walker v. THI of New Mexico at Hobbs Ctr.*, 801 F. Supp. 2d 1128, 1153-54 (D.N.M. 2011) (declining to employ a single employer theory to determine whether the court possessed personal jurisdiction and observing that '[t]he single integrated-enterprise theory derives from federal law regarding Title VII, a different body of law than law regarding minimum contacts'");

*Tese-Milner v. De Beers Centenary A.G.*, 613 F. Supp. 2d 404, 414 (S.D.N.Y. 2009) ("[T]he Court has not encountered, and Plaintiff does not offer any legal support for the concept that 'integrated enterprise' has any legal meaning for the purposes of the relevant personal jurisdiction law.").

Based upon the foregoing, the plaintiffs may not use the integrated enterprise theory to establish personal jurisdiction over DHD Ventures and DHD NC as it is a liability standard and not a jurisdictional standard. The plaintiffs have failed to make a *prima facie* showing of personal jurisdiction as to these defendants. Accordingly, the motions to dismiss of defendants DHD Ventures and DHD NC should be granted (docs. 14, 15, 24, 25, 26, 27), and they should be dismissed from this action for lack of personal jurisdiction.[1]

### *Statute of Limitations*

Defendant DHD Management argues that the alleged acts occurring prior to October 2011 should be dismissed as they are time barred and/or were conduct that occurred while Ware and Lesine were employed by TriBridge Residential. The undersigned agrees.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *See Butler v. United States*, 702 F.3d 749, 752 (4th Cir. 2012). To survive such a motion, the complaint must contain facts sufficient "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). When determining a motion to dismiss pursuant to Rule 12(b)(6), the court must take all well-pled material allegations of the complaint as admitted and view them in the light most favorable to the

---

[1] As the undersigned recommends that these defendants be dismissed for lack of personal jurisdiction, the remaining arguments in their motions will not be addressed.

non-moving party. *De Sole v. U.S.*, 947 F.2d 1169, 1171 (4th Cir. 1991) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)).

A court may consider "documents attached or incorporated into the complaint" without converting a motion to dismiss into a motion for summary judgment. *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Further, "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir.1999)); *see also Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (stating that "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed") (citing *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co* ., 267 F.3d 30, 33 (1st Cir. 2001)).  Furthermore, the court may consider a plaintiff's charge of discrimination in ruling on a motion to dismiss. *See Williams v. 1199 Seiu United Healthcare Workers East*, C.A. No. 12–72, 2012 WL 2923164, at * 1 n.1 (D. Md. July 17, 2012) ("In the employment context, a court may consider an EEOC charge and other EEOC documentation [when considering a motion to dismiss] because such documents are integral to the complaint as Plaintiff necessarily relies on these documents to satisfy the time limit requirements of the statutory scheme.") (citing *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006)).

Under Title VII, a plaintiff must file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory activity, or, as here, within 300 days if the plaintiff initially instituted proceedings with a designated state or local agency.  42 U.S.C. § 2000e-5(e)(1).  The charges filed on behalf of Ware and Lesine were filed on November 18, 2011. Counting back 300 days, the applicable date within which the statute of limitations allows claims to be brought under the charges filed by Ware and Lesine is January 22, 2011. However, both the charges and the EEOC's complaint contain allegations that the

unlawful practices occurred as far back as 2007 for Lesine and as far back as 2008 for Ware (doc. 1 ¶¶ 12-16).  TriBridge Residential managed the apartments where Ware and Lesine worked from December 2010 until early October 2011 (doc. 1 ¶ 20).  Accordingly, DHD Management argues that alleged acts occurring prior to October 2011 are time-barred and/or were allegedly conducted while Ware and Lesine were employed by a third party (doc. 12-1 at 7-9).  The EEOC and the intervenor plaintiffs seek to hold DHD Management accountable for the alleged acts of TriBridge Residential under a successor liability theory and for the alleged acts outside the 300 day window under a continuing violations theory (doc. 28 at 13-17).

The EEOC's complaint and the intervenor complaints fail to plead factual allegations that would give rise to either theory of liability.  With regard to successor liability:

> Courts have identified nine factors to be considered in determining whether successor liability should be imposed in a discrimination case: (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product.
>
> *Musikiwamba v. ESSI, Inc*., 760 F.2d 740, 750 (7th Cir.1985). The first two factors are considered the most critical, with the remaining seven simply providing a foundation for analyzing the larger question of whether there is a continuity in operations and the work force. *Rojas v. TK Communications, Inc.*, 87 F.3d 745, 750 (5th Cir.1996).

*Conner v. Colony Lake Lure*, No. 4:97cv01, 1997 WL 816511, at *5 n. 3 (W.D.N.C. Sept. 4, 1997).

The plaintiffs argue that sufficient facts have been alleged to give rise to a successor liability theory because the alleged hostile work environment continued

9

uninterrupted from the hiring of Lesine and Ware through their termination of employment, both while DHD Managment was managing the apartments and while TriBridge Residential was managing the apartments, and DHD Management was on notice of Lesine's and Ware's complaints of harassment during both periods of its management (doc. 28 at 16). As set forth above, the EEOC's complaint alleges, "From December 2010 through early October 2011, the Grandeagle Apartments was in receivership and was managed by TriBridge Residential, a corporate entity *with no apparent connection to Defendants*" (doc. 1 ¶ 20) (emphasis added).   The EEOC's complaint further alleges, "The harassment of Lesine and Ware, which began during Defendants' management of the Property, continued uninterrupted throughout the period of receivership. The harassment then further continued uninterrupted after Defendants resumed management of the Property in October 2011" (*id.* ¶ 21).

The plaintiffs contend that "[i]t would be inequitable to permit Defendant to avoid responsibility for a hostile work environment that it knew about and failed to correct by virtue of a temporary, involuntary interruption of management duties" (*id.* citing *EEOC v. Vucitech*, 842 F.2d 936 (7th Cir. 1988)). In *Vucitech*, the owners of a company retired and sold the company. Prior to the sale, EEOC Charges of Discrimination were filed. As part of the sales agreement, a determination on liability for the charges was addressed by the parties and expressly assumed in the sales contract. 842 F.2d at 939. As argued by DHD Management, this factual scenario is wholly inapplicable to the case at hand. The plaintiffs have failed to plead a single fact going toward any one of the nine factors cited above.  The plaintiffs further argue that "the relationship between DHD Management and TriBridge during the receivership period is unclear. . . .. [T]he relationship warrants exploration during the course of discovery, rendering Defendant's argument premature" (doc. 28 at 17). However, it is undisputed that the EEOC investigated Lesine's and Ware's claims for over three years, and, after this long investigation, the EEOC pleaded that TriBridge had "no apparent connection" to DHD Management (doc. 1 ¶ 20). Questions regarding this relationship should have been particularly relevant to the investigation since the vast

majority of the time period during the 300 day statute of limitations for Title VII occurred during the time period in which TriBridge Residential, not DHD Management, employed Ware and Lesine.  The plaintiffs have failed to plead factual allegations that would give rise to the successor liability of DHD Management for the alleged conduct of TriBridge Residential.

The plaintiffs contend that the alleged conduct occurring outside the statutory time period is relevant and should not be excluded. The continuing violation doctrine provides that "all acts which constitute the [Title VII] claim are part of the same unlawful employment practice," and "[i]t does not matter, for purposes of [Title VII], that some of the component acts of the hostile work environment fall outside the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). A plaintiff therefore "can recover for acts occurring even beyond that [time] period, as long as at least a portion of the hostile work environment occurred within the relevant limitations period." *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 292–93 (4th Cir. 2004) (citing *Morgan*, 536 U.S. at 122). Here, however, the plaintiffs are asking the court to allow it to disregard months of separation between the intervening plaintiffs and DHD Management during a time when "a corporate entity *with no apparent connection to [DHD Management]*" employed Lesine and Ware. Further, during the time period prior to TriBridge Residential, there is no allegation pled that a charge was filed with the EEOC to make those allegations timely. Based upon the foregoing, the undersigned finds that the continuing violation doctrine is not applicable to the plaintiffs' allegations.

Based upon the foregoing, the alleged acts occurring prior to October 2011 are time barred and/or were conducted while Ware and Lesine were employed by a third party.  Accordingly, the allegations of conduct outside this time period should be dismissed from the EEOC's complaint and the intervenor complaints.[2]

---

[2]     DHD Management's argument that TriBridge is an indispensable party will be rendered moot if the district court adopts the undersigned's recommendation that the 300-day time period should be enforced (*see*

Lastly, DHD Management argues that the complaints should be dismissed based on the doctrine of laches (doc. 12-1 at 9-13).  To establish a laches defense, DHD Management must prove (1) EEOC lacked diligence in pursuing the instant claim and (2) that it suffered prejudice as a result. *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 409 (4th Cir. 2005).  DHD Management argues that the EEOC's unreasonable and inexcusable delay in processing the charges and filing this action has and will continue to cause it undue and substantial prejudice, including unavailability of witnesses, faded memories, changes in personnel, and an unfair enlargement of potential back pay liability (*id*.).    DHD Management references an affidavit  from its Human Resources Manager in support of its arguments (*id.* (citing doc. 12-6, Hauser aff.)). As consideration of this affidavit would convert the motion to one for summary judgment, the affidavit will not be considered by the undersigned.  DHD Management has not established as a matter of law from the pleadings that there was an unreasonable delay by the EEOC in bringing this lawsuit or that it suffered prejudice. "Laches is an affirmative defense ... and "a motion to dismiss filed under [Rule 12(b)(6)], which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense." *In re Minh Vu Hoang*, C.A. No. DKC 12-0593, 2014 WL 937949, at *5 (D. Md. Mar. 10, 2014) (quoting *Goodman v. Praxair, Inc*., 494 F.3d 458, 464 (4th Cir.2007) (en banc)).  Accordingly, dismissal on this basis should be denied.

---

doc. 43 at 5 n. 8).

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the motions to dismiss of DHD NC and DHD Ventures should be granted (docs. 14, 15, 24, 25, 26, 27), and these defendants should be dismissed from this case based upon lack of personal jurisdiction. Furthermore, the motions to dismiss of DHD Management (docs. 12, 20, 21) should be granted in part and denied in part as set forth above.

May 12, 2015                                  s/ Kevin F. McDonald
Greenville, South Carolina                    United States Magistrate Judge

13